ON PETITION FOR REHEARING
En Banc.
HAWKINS, Justice, for the Court:
Upon the petition of Charles Dane Leathers for a writ of mandamus, this Court, on July 28, 1982, ordered the circuit clerk of Lee County to enroll a Mississippi Workmen’s Compensation Commission order dated December 11, 1980, in the judgment roll of Lee County. Our Order was pursuant to an opinion by this Court.
The circuit clerk, Mrs. Fay Estes, joined by Honorable Thomas J. Gardner III, circuit judge, defendants to the petition for mandamus, have petitioned us for a rehearing, joined therein by Tupelo Coffee Company and Aetna Casualty & Surety Company, the original defendants in a workmen's compensation case in which Leathers is the claimant.
We sustain the petition for rehearing, our original opinion is withdrawn, and the order thereunder is set aside.
Charles Dane Leathers filed a motion to controvert before the Mississippi Workmen’s Compensation Commission on February 16, 1978, naming as defendants his employer Tupelo Coffee Company and its insurance carrier Aetna Casualty & Surety Company.[1]
*1337 A hearing was held in Tupelo before an administrative judge of the commission on September 19,1978, and six months later on March 19, 1979, the administrative judge rendered his order. This order encompassed the evaluation of the testimony of three witnesses:' the claimant and his two treating physicians. The transcript consists of approximately 70 pages, of which the deposition of Dr. Ford taken September 13, 1978, consisted of approximately 25 pages.
On March 23, 1979, the employer-carrier filed a petition for review before the full commission. For our present purposes the next pertinent development was the entry by the commission of a Full Commission Order on July 18, 1979.
The order found as a fact:
1. Leathers had sustained a compensable injury October 7, 1976, temporarily totally disabling him until February 15, 1977, following which he had no loss of wage earning capacity.
2. Leathers sustained a compensable back injury on September 13, 1977. As to this injury, which is the only injury of any importance in this case, the commission disagreed with the administrative judge’s determination of the date of maximum medical recovery, and his award of permanent disability benefits, the commission finding instead, “... that a date of maximum medical recovery has not been authoritatively established by any of the expert medical witnesses and that as such, any award of permanent disability benefits is unwarranted.”
The order found as a fact that Dr. Buchanan, one of Leathers’ primary treating physicians, testified that Leathers should be able to return to his employment January 25, 1978, with certain lifting restrictions, and to his normal activities without restrictions following a six month period of light duty.[2]
The commission found that Dr. Buchanan’s testimony established the date of Leathers’ initial recovery and the end of the period of his total disability. It also found that Leathers was temporarily and partially disabled, but that neither Dr. Buchanan nor Dr. Ford had expressed an opinion as to any degree of permanent impairment resulting from his injury.
The commission found that no date of maximum medical recovery had been assigned by either treating physician, nor had there been any determination of the degree, if any, of permanent disability, and lacking such, any award of permanent disability benefits was unwarranted. The commission concluded that Leathers remained in a state of temporary and partial disability following January 24, 1978.
For the period following January 24, 1978, Leathers’ compensation rate for temporary partial disability was determined to be 66%% of the difference between his average weekly wages at the time of his injury and his wage earning capacity thereafter in the same employment or otherwise.
The commission then directed Leathers to furnish the employer-carrier during the continuance of this period of temporary partial disability a bi-weekly statement of his earnings so as to enable the employer-carrier to accurately determine the rate of compensation owed under Mississippi Code Annotated section 71-3-17 (1972).
Paragraph 2 of the adjudicatory portion of the order to the employer-carrier reads as follows:
2. Temporary partial disability benefits commencing January 24, 1978, and continuing until such time as maximum medical recovery is obtained, at the rate of 66% percent of the difference between claimant’s average weekly wage at the time of injury and his wage earning capacity thereafter in the same employ *1338 ment or otherwise. The employer-carrier is to be given proper credit for any payment of compensation heretofore paid in connection therewith. There shall be added to each payment of compensation not timely made the equivalent of 10 percent thereof, as specified in Section 13(e) of the Act, being Mississippi Code Annotated (1972), Section 71-3-37.[3]
It is thus apparent that the commission left open for later determination by it of the degree of and duration of Leathers’ temporary partial disability.[4]
The employer-carrier appealed the commission order, which the circuit court of Lee County affirmed in a judgment rendered August 30, 1979. Paragraph 2 of the adjudicatory portion of this judgment reads as follows:
2. Temporary partial disability benefits commencing January 24, 1978, and continuing until such time as maximum medical recovery is obtained, at the rate of 66[2]/3 percent of the difference between the claimant’s average weekly wage at the time of injury and his wage earning capacity thereafter in the same employment or otherwise. The employer-carrier is to be given proper credit for any payment of compensation heretofore paid in connection therewith. There shall be added .to each payment of compensation not timely made the equivalent of 10 percent thereof, as specified in Section 13(c) of the Act, being Mississippi Code Annotated (1972), Section 71-3-37.
The employer-carrier appealed the circuit court judgment to this Court. We affirmed this judgment on May 28, 1980, without an opinion, and on July 9, 1980, again without an opinion, we denied the petition for rehearing of the employer-carrier.
On July 28, 1980, the employer-carrier filed with the commission a motion to determine the accrued benefits and the date of Leathers’ maximum recovery. The motion recited the developments of the case including the appeals to and affirmance by this Court. The motion then alleged that Leathers had not provided the employer-carrier with any bi-weekly statements of his earnings as directed by the commission order of July 18, 1979, and that there had been no determination of the date that Leathers reached maximum medical improvement as well as no determination of his wage earning capacity since January 24, 1979 [sic].
The motion attached a copy of a letter, dated December 17, 1979, from Dr. Buchanan to counsel for the employer-carrier which reads as follows:
By restricting this patient (Leathers) January 24, 1978, he was not at maximum rehabilitation and did not attain that until June 1978 release to normal activity. By restricting his activities, he obviously was not back to full rehabilitation potential and we thought that by June he should be but certainly not by the January, 1978 date.
The motion further recited that the employer-carrier were unable to determine Leathers’ wage earning capacity subsequent to January 24,1978, through the date that he reached maximum medical improvement, without which determination the employer-carrier could not calculate the amount of benefits due through the date of the commission order.
The motion in conclusion requested a hearing to determine Leathers’ loss of wage earning capacity during the period of temporary partial disability; the date Leathers reached maximum medical improvement; and the amount due Leathers under the commission’s order of July 18, 1979.
*1339 On August 27, 1980, a hearing on this motion was held by an administrative judge of the commission. At this hearing Leathers and his wife testified, and a deposition of Dr. Buchanan, taken August 22, 1980, was offered by both parties.
On October 17, 1980, the administrative judge rendered an order finding among other things that Leathers, “.. . remains in a state of total disability and is still suffering a 100% loss of wage earning capacity as a result of the injury which he sustained on September 13, 1977.” We specifically refrain from rendering any declaratory opinion because Leathers’ claim is again on appeal before us, but we are constrained to state that the administrative judge’s findings appear at variance to the opinion of Dr. Buchanan, the only medical witness who testified.
The employer-carrier, on November 3, 1980, filed a petition for review before the full commission of the administrative judge’s decision.
A full commission order was rendered December 11, 1980. We again refrain from a declaratory opinion on the findings in the full commission order for the reason stated. It appears, however, that the commission was of the opinion that the primary (if indeed not the only) reason that the employer-carrier gave for not paying benefits ordered by this Court was, “... they had not been provided a bi-weekly statement of complainant’s earnings from January 24, 1978, to date of claimant’s maximum medical recovery.” The commission responded in its order that the employer-carrier could have readily ascertained the amount of any wages by contacting the claimant or his attorney;' and further, had the defendants requested computation of the amounts due under the award, the computation would have been supplied by the commission’s computist. It appears that the commission in its order neither fully nor precisely reflected the employer-carrier’s contention nor the record before it.
At some date subsequent to his injury of September 13,1977, Leathers was no longer employed by Tupelo Coffee Company. The December 11, 1980 order requiring the employer-carrier to obtain information from Leathers or his counsel ignores the specific direction of the commission’s own order of July 18,1979, to the claimant to furnish this information to the employer-carrier. Other than whatever evidence was given at the August 27,1980 hearing before the administrative judge, there is no record that Leathers gave the employer-carrier any information pertaining to his earnings following January 24, 1978.
Furthermore, there was another legitimate and pertinent inquiry that the employer-carrier was entitled to make: the duration of and the degree of the temporary partial disability of Leathers subsequent to January 24, 1978. This had been specifically left open for later factual determination in the July 18, 1979 order of the commission.
The December 11, 1980 order of the commission states:
Defendants’ liability has been determined as follows:

The employer-carrier on some day in December, 1980 (the exact date is not shown in the record) filed with the commission a petition for rehearing on its order dated December 11, 1980.
*1340 This petition first states that the employer-carrier had, since the rendition of the December 11, 1980 order, paid Leathers temporary total benefits from January 24, 1978, through July 24, 1978, at the rate of $91.00 per week plus a ten percent penalty. The petition further alleged that the commission had erred in the following respects:
(a) ordering payment for temporary total benefits that had already been paid;
(b) in ruling its July 18,1979 order established a definite or certain amount that was due claimant as of that date;
- (c) requiring the employer-carrier to pay benefits regardless of whether Leathers was suffering from any disability during the period for which the benefits were ordered;
(d) awarding any benefits and assessing any penalties after the date of maximum medical recovery on July 24, 1978; and
(e) assessing penalties and interest.
The petition concluded that the December 11,1980 order of the commission refusing to consider the merits of the appeal and requiring the payment of benefits after July 24,1978 was contrary to the Constitution of the United States and the laws and constitution of the State of Mississippi.
After this petition of the employer-carrier was filed, Leathers filed a petition with the commission on January 12, 1981, to reopen the case, alleging that there had been a change of condition of Leathers’ temporary partial disability to permanent disability. Attached to the petition was a copy of a report of Dr. Forrest T. Tutor of a surgical operation on Leathers in which a partial hemilaminectomy was carried out on the L4 lamina.
On February 24,1981, the full commission sustained Leathers’ petition to re-open his case and remanded the cause to the administrative judge for further proceedings to resolve the issue raised by this petition.
On June 25,1981, Leathers filed a motion to withdraw his petition to re-open and to strike the interlocutory order of the full commission thereon. On July 1, 1981, the full commission sustained this motion.
On July 7, 1981, the employer-carrier filed with the commission a response to the motion to strike the interlocutory order of the full commission. In this motion the employer-carrier alleged among other things:
(a) The order of February 24, 1981 had not disposed of the employer-carrier’s petition for a rehearing of the December 11, 1980 order;
(b) The commission should enter a final order based on the record in the case resolving all disputed issues and not require the employer-carrier to pay any benefits for any period subsequent to July 24, 1978;
(c) Temporary total benefits had been paid Leathers from January 24, 1978, through July 24, 1978, at the rate of $91.00 per week plus a ten percent penalty, totaling $2,516.80;
(d) All medical and disability benefits ordered paid by the commission had been paid through .July 24, 1978, the date that the uncontradicted medical evidence showed the claimant had reached maximum medical recovery and was discharged to return to work without limitation or restriction;
(e) The July 18, 1979 order of the commission required the defendants to pay disability benefits only through the date of maximum medical recovery; and
(f) If the commission ordered the employer-carrier to pay temporary total benefits through July 18, 1979, regardless of whether the claimant was actually disabled, payment of $5,000.00 that could not be recovered would be required, and would force the employer-carrier to perfect an otherwise unnecessary appeal.
The response concluded with this paragraph:
That since the employer and carrier have paid benefits through July 24, 1978, the undisputed date that the claimant reached maximum medical recovery, and in order to promote judicial efficiency and avoid a piecemeal appeal the Commission should enter a final order adjudicating all issues in this cause including *1341 whether or not there is any proof of disability past July 24, 1978.
On July 20, 1981, the full commission rendered an order denying the employer-carrier’s petition for rehearing to its order of December 11, 1980.
On August 14, 1981, the employer-carrier gave notice of appeal to the circuit court of Lee County.
On January 27, 1982, Judge Gardner heard argument from counsel for both sides, following which he rendered an oral opinion, and rendered a judgment the same day. We think that the entire order should be set out in this opinion. It is as follows:
ORDER
This day this cause came on to be heard and was heard on appeal from the decision of the Mississippi Workmen’s Compensation Commission filed by the employer and carrier in this cause and after reviewing the record made before the Mississippi Workmen’s Compensation Commission and considering briefs, oral arguments and authorities cited by the parties in this cause the court finds as follows:
(A) That the decision of the Mississippi Workmen’s Compensation Commission dated July 18, 1979, which was affirmed by the Mississippi Supreme Court failed to provide any information on which the employer and carrier could make a determination of the amount actually due to the claimant under said order since it did not determine a weekly amount of permanent partial benefits due to the claimant or the date that the claimant reached maximum medical recovery;
(B) That the Commission decision of July 18, 1979, and the subsequent decisions of the Commission have left a number of issues unresolved, such as: duration of temporary partial disability; amount of weekly benefits due to the claimant during temporary partial disability; date of maximum medical recovery; permanent disability, if any; and permanent loss of wage earning capacity, if any;
(C)That since it is apparent from this record that this cause will need to be remanded to the Mississippi Workmen’s Compensation Commission for determination of the unresolved issues in this cause, a remand at this time would avoid piecemeal appeals to the Supreme Court, would promote judicial efficiency and would lead to the most expeditious final resolution of the issues in this cause.
It is, therefore, ordered and adjudged as follows:
(1) That this cause be, and hereby is, remanded to the Mississippi Workmen’s Compensation Commission;
(2) That the Mississippi Workmen’s Compensation Commission be, and hereby is, ordered and directed to make a determination of the duration of claimant’s temporary partial disability which commenced on January 24, 1978; weekly amount of compensation due to the claimant during such period of temporary partial disability; date of maximum medical recovery; extent of permanent disability, if any; and permanent loss of wage earning capacity, if any; and any other facts necessary to finally adjudicate the rights of the parties as much as possible including medical benefits due claimant.
(3) That the decision of December 11, 1980, and the subsequent decision denying the petition for rehearing be, and hereby are, held in abeyance and enforcement is stayed pending a final determination of all issues in this cause;
(4) That the rights of the parties on this appeal be, and hereby are, preserved and may be raised on any subsequent appeal from the decision of the Mississippi Workmen’s Compensation Commission after a final adjudication.
Leathers has perfected an appeal from the above judgment of the circuit court of Lee County in the workmen’s compensation case and this appeal is now pending in this Court.
On April 13, 1981, counsel for Leathers wrote Mrs. Estes, the circuit clerk, and apparently requested her to enroll the Decern- *1342 ber 11, 1980 order of the commission on the judgment rolls of Lee County. Counsel for the employer-carrier received a copy of this letter, and on April 14, 1981, wrote Mrs. Estes stating to her that a petition for rehearing had been filed after entry of the order, and also that there was a subsequent commission order dated February 24, 1981, in which the case had been remanded to the administrative judge. The last two paragraphs of this letter state:
Under the present status of the record no payment is in default, no final order has been entered and the rights of the parties to appeal the issues raised has been specifically preserved by the Workmen’s Compensation Commission.
Therefore, the order Mr. Lawson sent you is not one that can be enrolled under Section 71-3-49 and no execution can be issued.
Subsequent to this development, counsel for Leathers in either the latter part of April, or in May, 1981, filed a petition in the circuit court of Lee County in cause number 16,988 in that court for a writ of mandamus to compel the circuit clerk to enroll this judgment.[5]
This petition summarized the procedural steps previously had before the administrative judge, commission, circuit court, this Court, and the request to the clerk to enroll the judgment. The petition went on to recite opposing counsel’s instruction to the clerk "to not enroll the judgment, that the petitioner was totally disabled, had incurred heavy medical expenses which remained unpaid, and that he had been threatened with lawsuits for collection of unpaid medical expenses. He alleged irrevocable injury, that the employer-carrier at no time offered any medical proof to dispute the medical proof of petitioner, and that he was severely injured and unable to hold any employment which he was capable of doing. He finally alleged that the employer-carrier’s appeals had all been frivolous, that “this matter is res judicata,” and that the judgment of the workmen’s compensation commission was not appealable.[6] The petition concluded with a prayer for a writ of mandamus requiring the clerk to enroll his judgment in order that execution might be levied upon Tupelo Coffee Company and Aetna Casualty and Surety Company as provided by law.
The circuit judge heard the petition for the writ of mandamus on January 27, 1982, the same day that he heard the appeal in the workmen’s compensation case of Leathers, and rendered a final order denying the petition. The order recited that the purported judgment Leathers sought to enroll was not a judgment that could properly be enrolled.
No appeal was taken from this judgment of the circuit court denying the petition for the writ of mandamus. Instead, Leathers filed a new and original petition with this Court to compel the enrollment of this judgment. This petition was sustained by an order from a Justice of this Court on March 18, 1982. This order was in turn set aside upon a petition for rehearing because process had not been had upon the circuit clerk before issuance of the order. See Charles Dane Leathers, Petitioner v. Thomas J. Gardner III, et al., 413 So.2d 1390, en banc, Broom, J., for the Court (1982).
A second petition was filed in this Court May 17,1982, to compel the circuit judge to order the circuit clerk to enroll the December 11, 1980 order of the commission as a final judgment. On July 28, 1982, in an opinion by this Court, this second petition was sustained.
As we noted initially, we now withdraw the above opinion and set aside the order of this Court based thereon.
*1343 This Court is sustaining the petition made a “mistake of the head, and not of the heart.” At the time we had no record before us, as we now have, and relied upon statements of counsel in their motions and attachments made to their motions. Our concern was the exasperating and deplorably protracted events which have transpired in determining the rights of the parties in this case. Especially in a claim of an injured worker, lawyers, commissioners, and all judges have the strongest affirmative duty to hear, determine, and conclude the matter.
In this opinion we do not assess any blame upon any individual or officials, except, of course, admitting our own error in sustaining the petition.[7] Suffice it to say in the case of an injured worker, justice delayed is most assuredly justice denied.
Leathers manifestly was not entitled to have the December 11, 1980 judgment enrolled, in any event, at a time when a petition for rehearing of that order was pending before the full commission.
The December 11,1980 commission order was transmitted to the circuit clerk in April, 1981, and the petition to compel her to enroll the judgment was filed in either late April, or some time in May, 1981. Not only was the petition for rehearing of the December 11, 1980 order of the commission pending before the commission, but the commission had upon Leathers’ own motion re-opened the case for further hearing. We can see no reason whatever why counsel for Leathers should have expected the December 11, 1980 order of the commission to be enrolled in this posture of the proceedings.
It is also clear that the July 18, 1979 order of the commission, later affirmed by the circuit court judgment, in turn affirmed by us, left open for subsequent decision the degree of the duration of the temporary partial disability of Leathers after January 24, 1978.
Following affirmance, the employer-carrier were entitled to a hearing for a factual determination on this matter. Roberts v. Junior Food Mart, 308 So.2d 232 (Miss.1975); Jackson Ready-Mix Concrete and Western Casualty & Surety Company v. Young, 236 Miss. 550, 111 So.2d 255 (1959). If they were dissatisfied with the decision of the administrative judge, the commission, or the circuit court, they were entitled to an appeal. Let us suppose the situation were reversed, and upon affirmance and rehearing before the administrative judge and commission there had been an order that Leathers had no further disability following January 24,1978, yet there was lay and medical proof indicating that he was totally disabled at all times following this date. Could the employer-carrier maintain for a second that Leathers had no right of appeal from such an order?
The circuit judge was eminently correct in denying the petition for a writ of mandamus filed in the circuit court. For the same reason we were in error in sustaining the petition filed with us. A valid appeal had been perfected from an appealable order of the commission, and therefore it was not subject to enrollment on a judgment roll.
We have stated that we direct no criticism in this opinion, except to ourselves. We do feel an obligation to exculpate the local counsel for the employer-carrier, however, for every development subsequent to our original affirmance. This record shows that the employer-carrier at no time asked for any continuance, or engaged in any post-appeal dilatory tactic, but to the contrary evinced a genuine effort to conclude the matter.
PETITION FOR REHEARING SUSTAINED.
SUGG and WALKER, P.JJ., and BROOM and PRATHER, JJ., concur.
ROY NOBLE LEE, J., PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ., dissent.

. Leathers’ motion to controvert alleged only one injury, which occurred on September 13, 1977, and named his treating physicians as Dr. John M. Ford of Baldwyn and Dr. Ben Buchanan of Tupelo. Dr. Buchanan is an orthopedist.
The answer of the employer-carrier, filed March 17, 1978, admitted a compensable work related injury, but specifically flagged the problem with the following affirmative statement typed into the answer: “Temporary disability is alleged to be undetermined, however, defend *1337 ants deny any temporary disability for any period except the period from 9-13-77 through 1-29-78.” The answer also alleged that permanent disability was undetermined, and it denied that there was any permanent disability for any period.

. For this six month period following January 24, 1978, Dr. Buchanan was of the opinion that Leathers should not lift more than 25 pounds.

. The order did not direct the employer-carrier to make any payments from September 13, 1977, until January 24, 1978, the reason for which is not stated.

. The commission order makes no reference to a later determination by it of permanent partial disability benefits. We only surmise that the commission was of the opinion, based on a review of Dr. Buchanan’s testimony, that there would probably be no permanent partial disability, and the temporary partial disability would extend for a period of approximately six months following January 24, 1978.

. There are dates and perhaps other factors subject to conjecture on the writ of mandamus proceedings in the circuit court of Lee County. As will be noted in this opinion, no appeal was taken from the circuit judge’s denial of the petition for the writ, and we have no record of the pleadings or orders, except those which have been made exhibits or attachments to motions made in this Court.

. Presumably the petitioner was referring to the December 11, 1980 order of the commission as not being appealable.

. Although the author of this particular opinion abstained from that opinion, it was not because he did not fully agree with the result then reached.